NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 16, 2021
Decided December 22, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1104

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:20-cr-00006 |
| RAPHEAL SEAY, *Defendant-Appellant*. | Jon E. DeGuilio, *Chief Judge*. |

**ORDER**

Rapheal Seay was convicted of a federal firearm offense and appeals the denial of his motion to suppress evidence obtained from a traffic stop. Seay argues that the police officer who stopped him neither saw the traffic infractions nor reasonably relied on another officer's observation of them. After an evidentiary hearing, the district court found otherwise and, upon applying the so-called collective-knowledge doctrine, denied Seay's motion. We affirm.

# I

On December 9, 2019, multiple members of a drug enforcement task force in northwest Indiana conducted surveillance of Raphael Seay. Late that afternoon Officer Kyle Shiparski saw Seay participate in what appeared to be a hand-to-hand drug transaction, only to then drive away from the location and roll through two stop signs a few minutes later. Officer Shiparski conveyed the information to other members of the task force. Upon learning of the traffic infractions, Officer Matthew Babcock, who was parked a couple of blocks away, pulled over Seay. Shortly thereafter Officer Willie Henderson and others arrived at the stop. When one of the officers circled Seay's car with a drug-sniffing dog, the dog alerted. The ensuing search of Seay's car resulted in the police recovering both a 9mm handgun and a loaded magazine. A pat down of Seay turned up marijuana and paraphernalia. Upon being transported to the station house, Seay agreed to talk to the officers and admitted to possessing the recovered contraband.

Federal charges followed, and Seay moved to suppress the handgun recovered from the search of his car. His motion focused on what he saw as inconsistencies in the police paperwork—most especially, Officer Babcock's reporting that he learned of the stop-sign violations not from Officer Shiparski but from Officer Henderson, another member of the task force. Seay saw the contradiction between Officers Shiparski and Babcock's accounts as precluding application of the collective-knowledge doctrine and thereby negating any finding of probable cause to support the stop. Recognizing the tension in the police officers' accounts of who told who what, the district court held an evidentiary hearing.

Officer Shiparski testified consistent with his incident report that he notified Officer Babcock of Seay's traffic infractions. For his part, Officer Babcock testified that the information in his written report—that Officer Henderson told him about Seay's running the stop signs—was likely mistaken and that, because many officers were speaking over the same lines, he was uncertain who identified the violations and requested the stop. At the hearing, all officers explained that they had been communicating simultaneously by both radio and cell phone.

The district court credited the officers' accounts and denied Seay's motion to suppress. Applying the collective-knowledge doctrine, the district court explained that the information "supporting the probable cause needed to stop Mr. Seay's vehicle was communicated to the officers who made the stop" by "those with knowledge to support probable cause for the stop." From there the court found that "the hearing testimony of the police officers was credible, consistent, and reasonably explained the inconsistency

in the officer[s'] police reports." In the end, then, the district court found that probable cause justified the car stop.

Seay now appeals, challenging the district court's denial of his motion to suppress.

## II

### A

Under the collective-knowledge doctrine, an officer without personal knowledge of facts justifying a car stop can nonetheless stop a suspect at the direction of an officer who does possess knowledge sufficient to establish probable cause. See *United States v. Eymann*, 962 F.3d 272, 283–84 (7th Cir. 2020). The requisite inquiry proceeds in three steps: (1) the officer conducting the stop objectively relies on the information received; (2) the officer providing the information personally knows the facts that supply the required level of suspicion; and (3) the actual stop was no more intrusive than would have been permissible for the officer requesting it. See *United States v. Williams*, 627 F.3d 247, 252–53 (7th Cir. 2010).

We have never held that the doctrine requires the officer who conducted a car stop to specify precisely which of his colleagues saw the traffic infraction and directed the stop. Nor do we know of any other courts that have imposed any such clear-chain-of-knowledge requirement for the collective-knowledge doctrine to apply. The knowledge prong of the doctrine requires only a finding that an officer with first-hand knowledge sufficient to establish the requisite level of suspicion conveyed that information to the officer effecting the seizure. Compare *United States v. Hensley*, 469 U.S. 221, 232 (1985) (holding suspicion for stop was conveyed through police flyer though flyer did not name officer who originated the suspicion) with *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007) (declining to apply collective-knowledge doctrine without evidence that officers involved in the execution of a search communicated with one another).

### B

The district court's analysis was right at every turn. Indeed, upon recognizing the conflicts in the police paperwork, it did exactly what district courts should do by holding a hearing, assessing credibility, making findings of fact, and reaching a legal conclusion rooted in record evidence.

We see no clear error in the district court's finding that Officer Babcock learned of Seay's traffic violations from an officer who observed the infractions—Officer Shiparski—and conducted the stop in response to receiving that information:

- Officer Shiparski credibly testified, the district court found, that he saw Seay run two stop signs on Elm Street and based on that observation, asked Officer Babcock to conduct a stop.

- Officer Babcock testified that, within minutes of receiving that information from one of his colleagues, he pulled Seay over for rolling a couple of stop signs on Elm Street.

The combination of these facts amply supported the district court's finding and denial of Seay's motion to suppress.

Because Seay does not challenge any other aspect of the ensuing search, the district court properly denied the motion to dismiss.

For these reasons, we AFFIRM.